IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JOHN DOE, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| WILLIAM B. LEE, in his capacity as Governor of the State of Tennessee, | § |
| | § |
| AND | § |
| | § |
| DAVID B. RAUSCH, in his capacity as Director of the Tennessee Bureau of Investigation, | § |
| | § |
| Defendants. | § |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COMES NOW the Plaintiff, John Doe (hereinafter referred to as "Doe"), by and through undersigned counsel, and files this Complaint against Defendants, William B. Lee, in his capacity as Governor of the State of Tennessee, and David B. Rausch, in his capacity as Director of the Tennessee Bureau of Investigation. In support of his Complaint, Doe states as follows:

**I.    THE PARTIES**

1. Doe is an adult resident of Maury County, Tennessee.[1]

---

[1] Doe previously filed suit against Defendants in this Court in *Doe v. Lee, et al.*, No. 3:21-cv-00740. On July 19, 2022, Doe filed an unopposed motion for voluntary non-suit without prejudice because Doe had a separate state court criminal case pending in which he was accused of violating a provision of the Act. (D.E. 38, PageID #198-201). On July 20, 2022, this Court entered an Order granting Doe's unopposed motion for a voluntary non-suit without prejudice. (D.E. 38, PageID # 202). Since entry of that Order, Doe has successfully obtained a dismissal

1

2. Defendant, William B. Lee ("Governor Lee"), is the Governor of the State of Tennessee. Governor Lee is sued in his official capacity. Pursuant to Article 3, § 1 of the Tennessee Constitution, the executive power of the State of Tennessee is vested in the Governor. The Tennessee Constitution further provides that the Governor shall take care that applicable federal and state laws are faithfully executed. *See* Tenn. Const. art. III, § 10. Governor Lee is ultimately responsible for the enforcement of Tennessee law and for supervision of all state departments, including the Tennessee Bureau of Investigation ("T.B.I.") and the Tennessee Department of Correction. Governor Lee was and is at all points in time relative to this Complaint acting under color of state law.

3. Defendant, David B. Rausch ("Director Rausch"), is the Director of the T.B.I., a state agency with responsibility for enforcement and management of Tennessee's S.O.R. Director Rausch is sued in his official capacity. Director Rausch was and is at all points in time relative to this Complaint acting under color of state law.

## II. <u>JURISDICTION</u>

4. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because Doe seeks redress for the deprivation of rights secured by the U.S. Constitution. Doe's claims are brought pursuant to 42 U.S.C. § 1983.

5. Doe's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201—2202, by Fed. R. Civ. P. 57 and 65, and by the legal and equitable powers of this Court.

6. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b).

---

with prejudice of the separate state court criminal case that necessitated the voluntary dismissal without prejudice of his lawsuit in *Doe v. Lee, et al.*, No. 3:21-cv-00740.

## III. FACTUAL ALLEGATIONS

7. Doe is a Tennessee resident who, as of the drafting of the instant pleading, is being retroactively required to comply with the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 for the rest of his life. *See* Tenn. Code Ann. §§ 40-39-201 – 40-36-218 (2016) (hereinafter referred to as "the Act").

8. On July 2, 2002, Doe entered a "best interest," or "*Alford* plea,"[2] to one count of sexual battery and one count of sexual exploitation of a minor.

9. The victim in Doe's criminal case was under the age of twelve at the time of the commission of the offenses for which Doe was ultimately convicted.

10. As part of the plea agreement reached with the State of Tennessee, Doe was sentenced to an effective eight-year sentence suspended to eight years of supervised probation.

11. Doe's effective eight-year sentence expired as a matter of law on July 2, 2010.

12. The Sexual Offender Registration and Monitoring Act, 1994 Tenn. Pub. Laws, ch. 976 (the "1994 Act"), required Doe at the time of his convictions in 2002 to register as a "sexual offender" but, upon information and belief, his registration remained private and only available to law enforcement.

13. At the time of Doe's convictions in 2002 and as part of his bargain with the State of Tennessee, Doe was required to comply with the rules and conditions of the S.O.R. for a period of ten years after termination of active supervision on probation, parole, or any other alternative to incarceration. *See* Tenn. Code Ann. § 40-39-207(a) (effective to June 30, 2008).

14. Ten years after the passage of the 1994 Act, the 1994 Act was repealed and replaced by the original version of the current Act. *See* 2004 Tenn. Pub. Acts, ch. 921. The current Act

---

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).

comprehensively and dramatically changed the S.O.R.'s requirements, restrictions, and punitive impact in several respects, including but not limited to:

> a. Turning aspects of the S.O.R. that had been private into a publicly available centralized record system;
>
> b. Imposing the first fee requirement upon registrants;
>
> c. Creating two classifications of registrants—"sexual offenders" and "violent sexual offenders"—based solely on the registrant's conviction offense, not on an individualized assessment of the registrant;
>
> d. Expanding the lifetime registration requirement to all registrants classified as "violent sexual offenders";
>
> e. Enlarging the information registrants were required to provide to include the contact information of their nearest living relative, whether any minors live with them, their race and gender, and information about any cars, mobile homes, or boats they lived in;
>
> f. Requiring registrants classified as "violent sexual offenders" to report to a designated law enforcement agency in-person at least four times a year and others to report to a designated law enforcement agency in-person at least once per year, and to update their fingerprints, palm prints, and mugshots at each visit;
>
> g. Imposing a strict requirement to report any change in residence, employment, becoming a student, or release from incarceration within forty-eight hours; and

  h.  Enhancing the punishment for any violation of the S.O.R. to a Class E felony. *See* 2004 Tenn. Pub. Laws, ch. 921, § 1.

15.  Since 2004, the Tennessee General Assembly has amended the Act numerous times.

16.  Each amendment has been applied retroactively and subjected registrants, including Doe, to new, increasingly onerous obligations, restraints, disabilities, and punishments of a materially different character and a significantly greater magnitude than before.

17.  Effective July 1, 2014, the Tennessee General Assembly amended Tenn. Code Ann. § 40-39-207(g) to additionally require an offender to register with the S.O.R. for life if that offender has been convicted of an offense in which the victim was a child of twelve years of age or less. Tenn. Code Ann. § 40-39-207(g)(1)(C).

18.  But for the Tennessee General Assembly's enactment of Tenn. Code Ann. § 40-39-207(g)(1)(C) in 2014 and the unconstitutional retroactive application of that amendment to Doe, Doe would have otherwise been eligible for removal from the S.O.R. on July 2, 2020.

19.  Pursuant to Tenn. Code Ann. § 40-39-207, Doe has petitioned the T.B.I. for removal from the S.OR.

20.  Relying upon Tenn. Code Ann. § 40-39-207(g)(1)(C), the T.B.I. has unconstitutionally refused—and is unconstitutionally refusing—to remove Doe from the S.O.R. and its requirements.

21.  The Act imposes obligations, restraints, disabilities, and punishments upon Doe that are so extensive they cannot be set out in full here.

22.  Although Doe is only classified as a "sexual offender" who should otherwise have already been removed from the S.O.R. and its requirements, Doe is presently and

5

unconstitutionally being required by the T.B.I. to continue complying with the S.O.R. and its requirements for the rest of his life, including but not limited to verifying and/or updating the following information at least once every year:

  a. Doe's complete name and all aliases;

  b. Doe's date and place of birth;

  c. Doe's social security number;

  d. A photocopy of Doe's driver's license;

  e. Sexual offense(s) or violent sexual offense(s) for which Doe has been convicted, the date of the offense(s), and the county and state of each conviction;

  f. Name of any of Doe's current employers and length of employment, including physical addresses and phone numbers;

  g. Doe's current physical address and length of residence at that address, including any primary or secondary residences;

  h. Doe's mailing address, if different from Doe's physical address;

  i. Any vehicle, mobile home, trailer, or manufactured home used or owned by Doe, including descriptions, vehicle information numbers, and license plate numbers;

  j. Any vessel, live-aboard vessel, or houseboat used by Doe, including the name of the vessel, description, and all identifying numbers;

  k. Name and address of each institution of higher education in this state where Doe is employed or practices a vocation or is a student;

  l. Doe's race;

m. Doe's gender;

n. Name, address, and phone number of Doe's closest living relative;

o. Whether victims in the underlying offense(s) were minors or adults, the number of victims, and the correct age of the victim or victims and of Doe at the time of the offense or offenses, if the ages are known;

p. Verification by the T.B.I. or Doe that the T.B.I. has received Doe's D.N.A. sample;

q. A complete listing of Doe's electronic mail address information, including usernames, any social media accounts Doe uses or intends to use, instant message accounts, other Internet communication platforms or devices, and Doe's username, screen name, or other method by which Doe accesses these accounts or websites;

r. Whether any minor(s) reside in Doe's primary or secondary residences;

s. Any other registration, verification, and tracking information, including fingerprints and a current photograph of Doe, his vehicles, and his vessels, as required by T.B.I. rules;

t. Copy of Doe's passport; and

u. Professional licensing information that authorizes Doe to engage in an occupation or carry out a trade or business.

*See* Tenn. Code Ann. § 40-39-203(i).

23. The Act requires Doe to provide a "current" photograph, *see* Tenn. Code Ann. § 40-39-203(i)(19), which means if Doe's appearance changes, he must update the photograph within forty-eight hours. *See id.* § 40-39-203(a)(4).

7

24. In addition to reporting in-person at least once a year, Doe must report in-person within forty-eight hours if any of the information above changes. *See id.* For example, Doe must report in-person within forty-eight hours if he changes his address, job, email address, opens a Facebook account, buys or begins using a vehicle, or stops using a vehicle.

25. Upon information and belief, no "good cause" exception exists to the in-person reporting requirement or to the forty-eight hour notification requirements. Regardless of illness, injury, transportation problems, or other emergencies, Doe must report in-person within forty-eight hours or face criminal charges.

26. The Act's reporting, surveillance, and supervision requirements are similar to, but more restrictive and more onerous than, the reporting, surveillance, and supervision that Doe experienced while serving his effective eight-year sentence on probation.

27. Under the Act, Doe must report significantly more information than what he was required to report while he was serving his sentence on probation.

28. The Act's requirement that minor changes be reported in-person within forty-eight hours is a super-charged level of reporting that far exceeds what Doe experienced while he was serving his sentence on probation.

29. As a result of the Act's immediate reporting requirements, Doe must, for the rest of his life, report in-person to law enforcement with a frequency that is greater than his reporting obligations when he was on probation, or face severe criminal consequences in the form of prosecution for a Class E felony punishable by a sentence of one to six years, mandatory imprisonment for at least ninety days, and a mandatory minimum fine of $350.00.

30. The Act has severely impaired Doe's family relationships and parenting.

31. Doe was once married; however, Doe has lost his marriage to his wife and, as a result of Doe's ongoing unconstitutional obligation to comply with the Act's numerous, onerous, vague, and punitive restrictions on, *inter alia*, where Doe may live, work, and go, Doe's wife has refrained from re-marrying Doe.

32. Doe's constitutional right to engage in normal parenting activities for his remaining minor child has been, and continues to be, unconstitutionally impaired by the Act.

33. The Act prohibits Doe from standing, sitting idly by, or remaining within 1,000 feet of any the prohibited places referenced in the statute when minor children are present, while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there.

34. These extremely vague prohibitions make it virtually impossible for Doe to engage in normal and routine activities with his remaining minor child and his grandchildren, like going to the park, visiting the zoo, or attending school functions.

35. Doe desires to engage in normal activities with his remaining minor child and his four grandchildren for all of the significant milestones in their respective lives; however, Doe is constantly confronted with the reality that as long as he is on the S.O.R., that is impossible.

36. Doe cannot reside with his four minor grandchildren. *See* Tenn. Code Ann. § 40-39-211(c).

37. If Doe's remaining minor child and/or any of Doe's grandchildren are at any school, child care facility, public park, playground, recreation center, or public athletic field, Doe cannot enter the premises except to attend a "conference" with "officials," and only after receiving written permission or a request from the school's principal or facility's administrator, or to drop off or

9

pick up the child at school, and only after notifying the school's principal or administrator that he is a registered sex offender. *See* Tenn. Code Ann. § 40-39-211(d).

38. Even if school officials grant Doe permission to attend a "conference," Doe cannot attend his minor child or grandchildren's school or extra-curricular activities, or even their school graduations, because those are not "conferences." Doe cannot even attend parent-teacher conferences unless he is invited, and he cannot drop off or pick up one of his children at school unless he tells the school's principal he is a registered sex offender, and an "offender against children" at that.

39. The Act severely limits Doe's access to housing. The Act bars Doe from "residing" within 1,000 feet of any "public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public," making a substantial amount of housing unavailable as a matter of law. *See* Tenn. Code Ann. § 40-39-211(a)(1).

40. These blanket residency restrictions imposed by the Act are not rationally related to any compelling government interest, and there is no evidence that imposing them upon Doe is rationally related to any compelling government interest either.

41. Because the victim of Doe's offenses was a minor at the time of the commission of the offenses, Doe is also prohibited from residing with a minor. *See* Tenn. Code Ann. § 40-39-211(c).

42. Because of the severe restrictions on where Doe may lawfully reside, Doe has been relegated to living the past eighteen-plus years with his parents, as opposed to his wife, his children, and/or his grandchildren.

43. Doe is legally blind and receives disability benefits from the federal government as a result of this disability.

44. As if a substantial number of employment opportunities for Doe were not already unavailable to Doe as a result of Doe's vision disability, the Act bars Doe from working within 1,000 feet of any "public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public," thus making Doe's ability to obtain gainful employment virtually impossible as a matter of common sense and as a matter of law. *See* Tenn. Code Ann. § 40-39-211(a)(1).

45. The Act's restrictions on where Doe may be gainfully employed severely restrict the jobs Doe can seek, and where he can apply for employment opportunities and advancements.

46. The employment restrictions under the Act are not rationally related to a compelling government interest.

47. The Act makes it more difficult for Doe to obtain an education. Doe's sex offender registration must include the name and address of each institution of higher education where Doe is a student, *see* Tenn. Code Ann. § 40-39-203(i)(12), and the T.B.I. must provide Doe's registration information to any school in which Doe becomes a student, *see id.* § 40-39-214(a)(2), thus automatically stigmatizing Doe if he seeks an education.

48. Doe unsuccessfully attempted to obtain his bachelor's degree from a university located in Middle Tennessee after he was placed on the S.O.R.; however, because of the requirements of providing the university with his class schedule and advanced notice of where and when he will be while on campus, the distance away from the university Doe was relegated to live because of housing restrictions, the requirement from his probation officer to wear a G.P.S.

tracking device, and the stigma and fear of being on the S.O.R. while a student all collectively resulted in Doe not obtaining his bachelor's degree.

49. Doe's status as a registrant has severely restricted his ability to travel.

50. Doe must provide at least twenty-one days' advance notice before traveling out of the country. *See* Tenn. Code Ann. § 40-39-204(h). The Act allows overseas travel on twenty-four hours' notice in just two cases: (a) registrants who travel out of the country frequently "for work or other legitimate purpose" and who have "the written approval of the designated law enforcement agency"; and (b) registrants who travel overseas for "emergency situations." *Id.* Since, upon information and belief, the law does not define what constitutes an "emergency," whether Doe can leave the country on less than twenty-one days' notice is subject to the arbitrary determination of law enforcement officials.

51. If Doe travels, then he must comply with any applicable sex offender registration laws in other jurisdictions. Depending on how long he travels, he may have to register as an offender. Because sex offender registration laws are exceedingly complex and vary from state to state, it is extremely difficult to obtain accurate information about either affirmative reporting obligations (such as registering one's presence in a state) or prohibitions on ordinary behavior (such as visiting a library or park) in other jurisdictions.

52. Because of the complex, vague, and onerous requirements for traveling out of state, Doe has chosen not to travel out of state the entire time he has been on the S.O.R. and has, *inter alia*, foregone attending family trips and foregoing attending his grandfather's funeral in the State of New York.

53. Doe's status as a registered sex offender has severely restricted his ability to speak freely on the internet.

54. Doe must provide the T.B.I. with all of his email addresses, usernames, screen names, and other methods by which he accesses social media accounts, instant messages, and other internet communication platforms.

55. Doe must report any changes to these communication platforms within three days or risk felony criminal prosecution.

56. Upon information and belief, the T.B.I. is authorized to provide Doe's internet communication names or identity information (i.e., email or instant message address(es)) to thirty-party companies that offer electronic communication or remote computing services for the purpose of prescreening new users. In that event, the business or organization agrees to notify the T.B.I. when any of Doe's internet communication names or identity information is being used on their system. Through the Act, Defendants afford Doe no right to privacy regarding his email or social media accounts.

57. Doe is concerned about using the internet because the Act is unclear about whether, for example, he must report if he sets up an online account to pay his taxes, gas bill, water bill, electric bill, registers with Netflix, or purchases products on Amazon.com. Doe has a Facebook account, but he chooses not to use it for fear that he will unknowingly violate the Act.

58. Because Doe must provide all email and internet identifies pursuant to the Act, Doe is concerned that his internet usage will be monitored. That fear is well-founded because the Act expressly authorizes such monitoring:

> Registry information regarding all registered offender's electronic mail address information, any instant message, chat or other Internet communication name or identity information may be electronically transmitted by the TBI to a business or organization that offers electronic communication or remote computing services for the purpose of prescreening users or for comparison with information held by the requesting business or organization. **In order to obtain the information from the TBI, the requesting business or organization that offers electronic communication or remote computing services shall agree to notify the TBI**

13

> **forthwith when a comparison indicates that any such registered sex offender's electronic mail address information, any instant message, chat or other Internet communication name or identity information is being used on their system.** The requesting business or organization shall also agree that the information will not be further disseminated.

Tenn. Code Ann. § 40-39-203(m) (emphasis added).

59. Doe is aware that any electronic speech he wishes to make may be monitored by the T.B.I. or other state actors and lead to undesired consequences from those administering and enforcing the Act.

60. Under the Act, Doe cannot engage in anonymous political speech on the internet because Doe must publicly report the email address or other username he uses on any site such as Change.org or Whitehouse.gov. The United States Supreme Court has held that anonymous political speech exemplifies the purpose of the First Amendment:

> Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent. Anonymity is a shield from the tyranny of the majority. *See generally* J. Mill, *On Liberty and Considerations on Representative Government* 1, 3–4 (R. McCallum ed. 1947). It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—
> and their ideas from suppression—at the hand of an intolerant society.

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). The anonymous online petitioner, blogger, and commenter is the modern version of the anonymous pamphleteer. The Act deprives Doe of his constitutional right to engage in such protected speech.

61. The S.O.R. publicly brands Doe a "sexual offender" and an "offender against children.

62. The T.B.I.'s public registry website generates hostility toward Doe and enables anyone to find him by posting extensive personal information about him, including his primary address, his secondary address, his photograph, his driver's license number, and date of birth.

63. Because of his status on the S.O.R. and upon information and belief, Doe is prohibited from decorating the exterior of his home for any holidays.

64. Because of his status on the S.O.R. and upon information and belief, Doe must remain indoors on Halloween, with no candy or decorations, and all of his lights off.

65. Doe is incredibly hesitant to talk to neighbors who live nearby for fear that he or his parents, with whom he resides, will suffer retribution, persecution, and/or humiliation by virtue of Doe's status as a "sexual offender" on the S.O.R. For the most part, Doe only converses with family members to avoid members of the community finding out that he is on the S.O.R.

66. The restrictions and obligations of the Act are so vague that Doe is unable to know whether or not he is in violation of certain aspects of the law. For example, with respect to employment, the Act requires an offender to report a "material change in employment or vocation status" within forty-eight hours and defines a "material change in employment or vocation status" to include "substantially changing the offender's hours of work at the same employment or vocation" or "any other change in the offender's employment or vocation that differs from that which the offender originally registered" if the change remains in effect for five consecutive days or more. *See* Tenn. Code Ann. § 40-39-203(a)(6). If Doe were to take a vacation for more than five days and not work during that time period, then Doe would not know whether he must report that period.

67. Doe must obtain and maintain a valid driver's license or photo identification and to "always have the license or identification card" in his possession. *See* Tenn. Code Ann. § 40-39-213(a). The law does not define "possession." Thus, it is unclear whether Doe is in violation of the law in situations where he cannot have his identification on his person, for example, while swimming, sleeping, or exercising.

## IV. CLAIM FOR RELIEF

### VIOLATION OF THE *EX POST FACTO* CLAUSE

68. Doe realleges the foregoing paragraphs as if fully set forth herein.

69. The retroactive application of the Act to Doe violates the *Ex Post Facto* Clause of the United States Constitution, Art. I, § 10, cl. 1, because the Act in its current form is punitive in nature and imposes punishment upon him that the law did not impose at the time Doe committed the crimes of which he was convicted.

70. Defendants' enforcement of the Act against Doe violates the *Ex Post Facto* Clause of the United States Constitution.

## V. REQUEST FOR RELIEF

**WHEREFORE**, premises considered, Doe requests:

1. That proper process issue and Defendants be required to Answer this Complaint within the time provided by law;

2. That this Court grant a preliminary injunction enjoining Defendants from enforcing the Act against Doe on the basis of his 2002 convictions;

3. That this Court issue a Judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring the retroactive application of the Act violates the *Ex Post Facto* Clause of the United States Constitution, and issue a permanent injunction removing Doe from the S.O.R. and restraining Defendants from retroactively enforcing the Act against Doe;

4. That this Court permanently enjoin Defendants from enforcing the Act's restrictions against Doe on the basis of his 2002 convictions;

5. That Doe be awarded his attorney fees, costs, discretionary costs, and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d);

6. That the costs of this action be taxed against Defendants; and

7. That Doe be awarded all other relief, injunctive, equitable, or otherwise, to which he may be entitled.

Respectfully submitted,

/s/ Brandon E. White
Brandon E. White – TNBPR #033618
The Law Office of Brandon E. White
39 Public Square, Suite 1
Columbia, TN 38401
Office: (931) 901-0193
Fax: (931) 548-2717
brandon@brandonewhitelaw.com